# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DENNIS E. JONES-EL,

    Petitioner,

  v.            Case No. 07-C-680

RICHARD SCHNEITER,[1]

    Respondent.

## DECISION AND ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS AND ON MOTION FOR EVIDENTIARY HEARING

## I. PROCEDURAL BACKGROUND

On July 25, 2007, the petitioner, Dennis E. Jones-El ("Jones-El"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition was randomly assigned to United States District Judge William C. Griesbach. After reviewing Jones-El's petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, Judge Griesbach ordered the respondent to answer the petition and, in that same order, issued a briefing schedule. Thereafter, on September 13, 2007, the case was reassigned to this court based on the parties' consent to magistrate judge jurisdiction. Initially, this court ordered that the schedule for the respondent's answer and the briefs of the parties issued by Judge Greisbach would govern the processing of the petition. Over the course of the last year and a half, motions for various sorts of relief were filed by the parties and ruled upon by this court. Finally, on February 19, 2009, the petitioner filed his reply briefs in support of the claims asserted in his habeas corpus petition and in support of his motion for

---

[1] Jones-El was incarcerated at the Green Bay Correctional Institution when he commenced this habeas corpus action. He was subsequently transferred to the Wisconsin Secure Program Facility in Boscobel, Wisconsin, where Richard Schneiter serves as the warden. Thus, Richard Schneiter is being substituted for William Pollard as the respondent.

evidentiary hearing. Thus, the petition and the motion for evidentiary hearing are now fully briefed and are ready for resolution.

In June of 1995, the petitioner was convicted in the Kenosha County Circuit Court, after a jury trial, of armed robbery, possession of a firearm by a convicted felon, and possession of a short-barreled shotgun, all as a repeat offender. He was sentenced to a total of forty-six years in consecutive prison terms. After seeking relief from his conviction in the state courts, Jones-El filed a federal habeas corpus petition in which he challenged his state court conviction. On February 21, 2003, United States District Judge Lynn Adelman granted his petition in so far as he ordered Jones-El released from custody unless the State of Wisconsin reinstated his right to a state court direct appeal from his conviction and provided him with the assistance of appointed counsel for the appeal. Judge Adelman did not address any of the substantive issues raised by Jones-El in his habeas petition. The Wisconsin courts subsequently reinstated Jones-El's direct appeal rights and appointed counsel for him.

Before a postconviction motion could be heard, Jones-El's newly-appointed counsel moved the circuit court for leave to withdraw. In the motion, counsel stated that Jones-El and he had disagreed about the grounds for a postconviction motion and that Jones-El had told counsel that he would either represent himself or retain a new attorney. The circuit court held a hearing on the motion to withdraw on October 2, 2003. At that time, the court conducted a colloquy with Jones-El in order to determine whether he truly wished to proceed without counsel, and whether he truly understood the responsibilities and difficulties of self-representation. The court found that Jones-El had the competency and ability to represent himself, and that he wanted to do so. Thus, the court granted counsel's motion to withdraw.

2

At the beginning of the hearing on Jones-El's motion for postconviction relief, the court conducted another colloquy with Jones-El about proceeding without counsel. Hearings on Jones-El's postconviction motion were conducted on March 31, 2004 and May 7, 2004. On May 11, 2004, the circuit court denied Jones-El's motion for postconviction relief.

On April 5, 2006, the Wisconsin Court of Appeals affirmed Jones-El's conviction and the order denying his postconviction motion. On July 25, 2006, the Wisconsin Supreme Court denied Jones-El's petition for review. Thereafter, and as previously stated, on July 25, 2007, Jones-El filed the instant habeas corpus petition.

Jones-El challenges the constitutionality of his state-court conviction on the following grounds: (1) he was deprived of his due process right to a fair trial by evidentiary references during his trial to his prior convictions for armed robbery and soliciting perjury; (2) his Fourth and Fifth Amendment rights were violated by his arrest and by the introduction into evidence of an impermissibly suggestive lineup and photo array; (3) the state court judge's partiality or bias violated Jones-El's due process right to a fair trial; (4) he was deprived of his right to a fair trial by the trial court's ruling that he could not subpoena and present the testimony of a witness whom the victim had initially identified in a lineup as the robber and by the prosecutor's inflammatory descriptions at trial of Jones-El and his alibi witnesses; (5) he was deprived of his right to the effective assistance of counsel in several respects; and (6) he was deprived of his right to a full and fair appellate review of his claims in the Wisconsin courts.

For the reasons which follow, the petitioner's habeas corpus petition will be denied and the petitioner's motion for evidentiary hearing will be denied as moot.

## II. FACTUAL BACKGROUND

A summary of the trial evidence on which Jones-El was convicted appears in the decision of the Wisconsin Court of Appeals affirming his conviction – the 1998 unpublished decision in *State v. Jones*, Case No. 96-3443-CR, 220 Wis. 2d 714, 583 N.W.2d 673 (Ct. App. 1998) (unpublished opinion) (Respt.'s Answer, Ex. E).[2] That decision provides, in relevant part, as follows:

> Jones was convicted of robbing a delicatessen. On the same afternoon of the robbery, Jones had entered the store twice before to purchase a small item. After the robbery, he was observed leaving in a car that was later found to belong to Jumard Brooks. After giving a false statement about the whereabouts of his car on the day of the robbery, Brooks admitted that he had loaned his gold Buick LeSabre to Jones. Brooks said that after using the car, Jones called him three times to ask about retrieving something from the car. Under the passenger seat of the car used by Brooks' wife, a white Buick Regal, Brooks discovered a bag with a sawed-off rifle in it. Three store employees identified Jones as the robber in lineup and photo array identifications.

> . . . The cash register attendant whom Jones confronted identified the rifle recovered from Brooks as the gun used in the robbery. Even if the witness was equivocal on cross-examination about whether it was the same gun, it only affected the weight of her testimony. Regardless of whether the witness could identify the actual gun used, she indicated that Jones was in possession of the firearm during the robbery.

(*Id.* at 2.) Other facts and matters that are material to Jones-El's petition will be discussed below in the body of this decision.

## III. LEGAL STANDARD

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir.1997); *see also Del Vecchio v. Illinois Dept. of Corr.*, 31 F.3d 1363, 1370 (7th Cir.1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.").

---

[2] Because of the voluminous state record in this case, this court's citations will be to the state proceedings as submitted in the exhibits to the Respondent's filings.

4

The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000). A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir.2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that "state

prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir.1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir.1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner must also show that the errors of which he

complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

## IV. DISCUSSION

As previously stated, Jones-El asserts six claims in support of his federal habeas corpus petition: (1) he was deprived of his due process right to a fair trial by evidentiary references during his trial to his prior convictions for armed robbery and soliciting perjury; (2) his Fourth and Fifth Amendment rights were violated by his arrest and by the introduction into evidence of an impermissibly suggestive lineup and photo array; (3) the state court judge's partiality or bias violated his due process right to a fair trial; (4) he was deprived of his right to a fair trial by the trial court's ruling that he could not subpoena and present the testimony of a witness whom the victim had initially identified in a lineup as the robber and by the prosecutor's inflammatory descriptions at trial of Jones-El and his alibi witnesses; (5) he was deprived of his right to the effective assistance of counsel in several respects; and (6) he was deprived of his right to a full and fair appellate review of his claims in the Wisconsin courts.

### A. Evidentiary References to Prior Convictions and Solicitation of Perjury

In a proceeding outside the jury's presence at Jones-El's trial, the defense acknowledged that Jones-El had three prior felony convictions – two for armed robbery and one for solicitation of perjury. The trial court ruled that, if Jones-El testified, inquiry into his prior convictions for purposes of challenging his credibility would be limited to testimony that he had been convicted of three crimes. Indeed, during his testimony Jones-El testified, in response to his counsel's questioning, that he had

been convicted of crimes on three prior occasions. He was questioned on cross-examination about circumstances involving his lineup in the instant case and during that line of testimony he stated that he had been convicted on an earlier occasion and had been in a lineup previously. But there was no reference made to the nature of his prior convictions.

However, during defense counsel's opening statement he revealed to the jury that Jones-El's record included "three serious criminal matters, two of which are prior armed robberies [from January and February 1990] . . . [and] that he was convicted of solicitation to commit a perjury." (Resp.'s Ex. 25 at 28.) The prosecutor subsequently did mention to the jury the fact of Jones-El's prior convictions, but not the nature of those convictions. (*See* Resp.'s Ex. 25 at 18-19.)

During an evidentiary hearing on Jones-El's challenge to the effectiveness of his trial counsel, defense counsel Richard Wells testified that he and Jones-El had decided in advance of trial "that we were going to tell the jury what [the prior convictions] were." (Resp.'s Ex. 31 at 34-35.) This strategy was to pre-empt what Wells thought to be the State's likely attempt to prove Jones-El's identity as the robber by seeking to introduce similar aspects of his prior armed robberies. (*Id.* at 35-36, 39-45.) After hearing the testimony of Wells and Jones-El on the issue, the trial court ruled that defense counsel's rationale for acknowledging the nature of Jones-El's prior convictions in his opening statement was a reasonable trial strategy. (*Id.* at 93.) Specifically, the trial court, in a May 7, 2004 hearing before Judge Bastianelli, stated as follows:

> The defendant's own recitation from the transcript clearly demonstrated a rational reason to present that to the jury. . . . And, therefore, I find credible the testimony based on the Court's ruling that there was a high probability, a good possibility – and, as he indicated, he knows this Court – which I've frequently done in rebuttal and indicating if the issue is ID and/or alibi, there's a possibility, which means a good possibility, that that's going to come in – the testimony of Mr. Wells on that point of why he sought to diffuse it so the State wouldn't bother using it or even raising it again is very credible. So, consequently, I don't find there is an ineffective assistance of counsel [claim] on that regard.

(*Id.* at 93.)  The court of appeals in *State v. Jones*, 2006 WI App 101, ¶¶ 8-9, 293 Wis. 2d 361, 715

N.W.2d 240 (unpublished opinion), agreed with the trial court's assessment of the issue.  Specifically,

the court of appeals stated the following:

> ¶ 8      . . . Jones asserts that his trial counsel was ineffective when he referred to
> Jones's prior convictions during the opening argument.  To establish an ineffective
> assistance of counsel claim, a defendant must show both that counsel's performance
> was deficient and that he was prejudiced by the deficient performance.  *Strickland v.*
> *Washington*, 466 U.S. 668, 687 (1984).  A reviewing court may dispose of a claim of
> ineffective assistance of counsel on either ground.  *Id.* at 697.  If this court concludes
> that the defendant has failed to prove one prong, we need not address the other prong.
> *Id.* We will not "second-guess a trial attorney's 'considered selection of trial tactics or
> the exercise of a professional judgment in the face of alternatives that have been
> weighed by trial counsel.' A strategic trial decision rationally based on the facts and
> the law will not support a claim of ineffective assistance of counsel." *State v. Elm*, 201
> Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996) (citations omitted).
>
> ¶ 9      In this case, the circuit court found after the [postconviction] hearing, that
> counsel presented credible testimony that he mentioned the prior convictions in his
> opening statement to pre-empt the State from offering the details of Jones's prior
> convictions.  We agree with the circuit court's finding that this was a reasonable trial
> tactic, and did not constitute ineffective assistance of trial counsel.

(Respt.'s Answer, Ex. N. at 4-5.)

Defendants in criminal cases have a constitutional right to effective assistance of counsel.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to establish an ineffective assistance

of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective and that

the ineffective assistance prejudiced the defendant.  A defendant must demonstrate that "counsel's

representation fell below an objective standard of reasonableness," and that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different," *Id.* at 688, 694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694.

The burden on a habeas petitioner to show that counsel's assistance was ineffective is not

easily satisfied.  "Because of the difficulties inherent in making the evaluation, a court must indulge

9

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Furthermore, a habeas court need not address the two prongs of *Strickland* in any particular order or even address both if the defendant makes an inadequate showing as to one. In this latter regard, the Supreme Court stated in *Strickland* as follows:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

In issuing its decision, the state court of appeals applied the correct Supreme Court decisional law, to wit, *Strickland*. Furthermore, and as noted above, in *Strickland* the Court stated that "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. This is the precise finding that the state court made, to wit, that the decision to tell the jury about the nature of the prior convictions was a sound trial strategy. This court cannot say that the court of appeals' application of *Strickland* to the facts as presented in this case was unreasonable. To the contrary, based on the testimony of Attorney Wells, it was a reasonable application of *Strickland*. Thus, to the extent that Jones-El's habeas

petition is predicated on the claim that he was deprived of effective assistance of counsel by virtue of his lawyer's telling the jury about the nature of his prior convictions, his petition will be denied.

## B. Impermissibly Suggestive Lineup and Photo Array

Jones-El claims that his Fourth and Fifth Amendment rights were violated by his arrest, which he claims was without probable cause, and by the introduction into evidence of identifications based on an impermissibly suggestive lineup and photo array.

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on grounds that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). Thus, if the state courts provided Jones-El with an opportunity for a full and fair litigation of his claim that he was arrested without probable cause in violation of the Fourth Amendment, *Stone* bars this court from reviewing such claim.

It appears that the state courts did indeed provide him such opportunity. In its decision of June 17, 1998, the Wisconsin Court of Appeals, albeit in the context of reviewing an ineffective assistance of counsel claim, stated the following:

> The claims that trial counsel failed to argue that the identifications were the product of an illegal arrest and failed to call witnesses regarding suggestiveness in the identification procedures lack merit. *Even in light of contradictory statements by Brooks, there was a lawful basis for Jones' arrest.* Based on the findings of fact made by the trial court, we are able to determine that the lineup and photo array identification procedures were not unduly suggestive.

(Respt.'s Answer, Ex. E at 10, emphasis added.) Thus, to the extent that Jones-El is seeking habeas relief from an alleged Fourth Amendment violation stemming from his arrest, his claim for such relief will be denied.

Jones-El also argues that his Fifth Amendment right to due process was violated by impermissibly suggestive line-ups and an impermissibly suggestive photo array. This claim was

11

presented to the trial court and a pre-trial evidentiary hearing was conducted before Kenosha County Circuit Court Judge Stephen A. Simanek on January 6, 1994. One witness testified at the hearing – Detective Kenneth Kopesky of the Kenosha Police Department. Detective Kopesky testified about the circumstances surrounding the line-ups in which Jones-El was a participant.

The first line-up was conducted on September 7, 1993, at which line-up two witnesses picked out Jones-El as the robber. The second line-up was conducted on November 27, 1993, at which line-up witness Karen Utec picked out somebody other than Jones-El as the robber. However, shortly after the November 27, 1993 line-up, witness Karen Utec was shown the challenged photo display. After viewing the photos, Utec picked out the photo of Jones-El as being that of the robber.

As noted above, in its decision and order of June 17, 1998, the Wisconsin Court of Appeals made short work of Jones-El's appeal of the circuit court's decision that neither the line-ups nor the photo array were impermissibly suggestive. The court of appeals stated in its June 17, 1998 decision and order that "[b]ased on the findings of fact made by the trial court, we are able to determine that the lineup and photo array identification procedures were not unduly suggestive." (Respt.'s Answer, Ex. E at 10.)

In the interest of completeness, and because it was the trial court's decision upon which the court of appeals rested its decision, this court will quote extensively from the trial court's oral decision denying Jones-El's motion to suppress evidence obtained from the line-ups and photo array. The trial court, in a January 6, 1994 hearing before Judge Simanek, stated as follows:

> The real issue here is whether or not the procedures used by the state were unnecessarily suggestive, encouraging witnesses to choose Mr. Jones over other individuals who were shown as well as Mr. Jones to those witnesses whether physically in person or through photographs. The defense has the burden of initially showing that there was an unnecessarily suggestive procedure shown. If the defense can meet that burden, showing that the lineup or photo array was unnecessarily suggestive, then the burden shifts to the state to show by clear and convincing evidence either that the out-of-court identification was reliable or a subsequent in-court

12

identification was from an independent source. So, where we are at this juncture is to determine whether or not the physical lineup and the subsequent photo array, the physical lineup on - - in September or the subsequent physical lineup and photo array in [November][3] were impermissibly suggestive.

I have before me the testimony of Detective Kopesky and I also have Exhibits Two, Three and Four which are photostatic copies and admittedly are not as clear as the original photographs would have been because they are photocopies of photographs. Those photographs do show that each of the individuals, each of the six in that initial lineup in September were all black males of varying hair length. The Court is aware that at that time Mr. Jones had long hair which appears to have been straightened. It was not curly as normally a black person would have curly hair. He has long hair which is relatively straight. The photo array – Excuse me. The photographs of that physical lineup [are] difficult to read because it's a photocopy, but it appears that a number of other individuals have hair of a similar length to Mr. Jones. Several of the individuals are taller. Several are the same height and it's difficult to tell from the photographs any difference in body structure or weight. It appears, however, that they are all black males. Again, it's difficult to tell the complexion of the individuals from these photocopies or photographs. With Mr. Jones appearing to be a medium to lightly medium complected black male. In any event, they are of similar height and weight, some of dissimilar height and weight. They are all black. They are all males. None of them appear to be wearing eyeglasses and their clothing all appears to be similar in that initial lineup. All apparently wearing jail garb from the Kenosha County Jail. There is nothing on this record that would indicate that any impermissible statements were made to the persons viewing the lineup to lead them to choose No. 4 who was Mr. Jones over any other individual. There is nothing in which the individuals were presented to the persons viewing the lineup that would suggest they were handled or treated differently from one another. That is, the officer testified that they were essentially shown to the victims and they had a jail personnel or deputy with each of the individuals as they were shown to the witnesses. And the witnesses viewed these individuals separately. The victims - - excuse me. The witnesses were not together when they viewed the lineup and made their choices. Umm - - So there's no indication here of any impermissible interaction between multiple witnesses with one making a decision based on something another witness may have said or observed. So as far as the lineup is concerned in September, September 7 or 8 - - September 8 I guess - -

MR. WELLS: Seventh.

THE COURT: - - September 7, although there are some dissimilarities as argued by Mr. Wells, I don't think that the procedure nor the components of the lineup itself were so unnecessarily suggestive as to lead any witness to choose No. 4, Mr. Wells.

_____

[3] The trial court mistakenly stated that the second lineup and photo array presentation were in October, when it is undisputed that they were in November.

13

With respect to the photo array, some 6 or 7 weeks later, again we have 6 photographs all black males, several of them with facial hair, some without facial hair of varying lengths, but it appears that each of the individuals in the photo array from [November][4] have long hair in the back. At least coming down to the collar or shoulder length, although arguably Mr. Jones has the longest hair of the 6 individuals in that photo array. Again, it is all what appear to be black males. However, several are much darker complected than is Mr. Jones, at least 3, probably 4 of the photographs in that photo array show black males with a complexion very similar to that of Mr. Jones being a medium or light to medium complexion. In that photo array, it appears that 5 out of the 6 individuals including Mr. Jones have facial hair either mustache or mustache and goatee. Again, that photographic does not appear to be unnecessarily suggestive. They are black males with relatively long hair, 5 out of the 6 with facial hair. I cannot tell from the photographs nor could any witness viewing the photographs tell how tall the individuals were since there are no demarcation lines alongside of the photographs indicating height. Their body structure appears to be relatively similar with regard to each of those 6 individuals. Again, I believe that the photographic array was not impermissibly suggestive, unfairly highlighting or pointing to Mr. Jones as the person the police wished to have the witness identify. He stands out in no particular way. I'll note that in the photo array, he is wearing a T-shirt with some kind of lettering on, but all of the other individuals, the other 5 are all wearing civilian clothing of a variety of types. In that respect, his clothing is not outstanding or distinguishable from the others. Several of the others appear to be wearing either sweatsuit type jacket or sweater type jackets; one wearing a shirt, one wearing leather jacket. The one wearing the leather jacket probably sticks out as far as clothing is concerned more than the others. They are all wearing casual civilian clothing. [The] Court believes that the photo array from [November] was also not unnecessarily suggestive and because I believe Mr. Jones was not entitled to counsel when the initial lineup occurred nor when the photo array was shown and because the other - - because the lineups themselves and the photo array itself are not impermissibly suggestive, the Court will deny the defense motion to suppress identification evidence obtained as a result of either the - - either of the two lineups or the photo array. I think the procedure used was appropriate not unfairly suggestive. The motion to suppress is therefore denied.

(Resp.'s Ex. 6 at 39 - 44.)

In *Stovall v. Denno*, the Supreme Court recognized a defendant's due process right to exclude identification testimony that results from unnecessarily suggestive procedures that may lead to an irreparably mistaken identification. 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). In *Neil v. Biggers*, the Court further explained that "[i]t is the likelihood of misidentification which

_____

[4] See footnote 2, above.

violates a defendant's right to due process"; thus, the focus of the inquiry is on the reliability of the identification testimony. 409 U.S. 188, 198, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

More recently, in *United States v. Griffin*, the Seventh Circuit stated as follows:

> Eyewitness identification testimony violates a defendant's right to due process of law when it creates a very substantial likelihood of irreparable misidentification. When considering whether the admission of identification testimony violated a defendant's right to due process, [courts] have followed a two-step approach. The defendant must first establish that the lineup procedures were unduly suggestive. If so, [courts] consider whether the identification was nevertheless reliable.

493 F.3d 856, 865 (7th Cir. 2007) (internal citations omitted).

In assessing the reliability of an identification procedure, the courts consider the following factors:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200.

Of course, in the instant case, the trial court proceeded no further than to find that neither of the lineups nor the photo array were "unduly suggestive." And the court of appeals went no further than to find that "[b]ased on the findings of fact made by the trial court, . . . the lineup and photo array identification procedures were not unduly suggestive."

As stated previously, the federal courts may not grant habeas relief under Section 2254 unless a state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Furthermore, issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this

presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

First of all, as is evident from the trial court's decision, the trial court applied the correct law as determined by the Supreme Court in *Stovall* and *Biggers*. And this court is not persuaded that the trial court's decision was an unreasonable application of that law. *See Ouska v. Cahill-Masching*, 246 F.3d 1036, 1044 (7th Cir. 2001) ("[I]n determining whether a state court decision was an 'unreasonable application of' clearly established law, we defer to any reasonable state court decision."); *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997) (finding that a state court decision is not unreasonable if it is "at least minimally consistent with the facts and circumstances of the case.").

Moreover, it is clear that Jones-El disagrees with the state court's finding that the lineups and photo array were not unduly suggestive. But, beyond his strongly asserted disagreement, he has not presented clear and convincing evidence to rebut the presumption that the trial court's finding on such issue was correct. *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Thus, to the extent that Jones-El is seeking habeas relief from alleged impermissibly suggestive lineups and a photo array, his claim for such relief will be denied.

## C. State Court Judge's Partiality or Bias.

Jones-El argues that two of the circuit court judges who handled various aspects of his state prosecution were biased against him. This claim was presented to the state courts and was rejected by them. In rejecting such claim, the court of appeals stated the following in its June 17, 1998 decision:

16

Jones argues that the trial court was biased against him and exhibited such bias during the trial by making erroneous and prejudicial rulings against him. Whether the trial judges' partiality, if any, violated Jones' right to due process presents a legal question subject to de novo review. There is a presumption that a judge is free of bias and prejudice. To overcome the presumption, the party asserting judicial bias must show by a preponderance of the evidence that the judge is prejudiced or biased. We look to whether there are objective facts demonstrating actual bias.

Jones attempts to show objective bias by arguing that the trial courts made improper rulings. His first contention is that Judge Vuvunas demonstrated bias when he reconsidered an earlier ruling denying the prosecution's motion to join at trial a complaint against Jones for solicitation of perjury involving Brooks. Judge Vuvunas' inquiry regarding whether there was any factual dispute about Jones having written the letter Brooks received about giving false testimony was proper in light of the determination to be made about whether evidence of the letter would be admissible in the robbery trial. Judge Vuvunas' inquiry did not mean that he had prejudged the solicitation case. Nor did he demonstrate personal bias against Jones simply by his willingness to entertain the prosecution's motion for reconsideration of the ruling made by another court judge.

Jones faults Judge Bastianelli for stating that he would not reconsider Judge Vuvunas' denial of Jones' motion to suppress evidence. Reconsideration was a matter of discretion for the trial court. Judge Bastianelli's expression that he would not reconsider was reasonable in light of his concern over delay in the prosecution and his acknowledgment that the issue was preserved for appellate review. This did not exhibit bias.

Jones absolutely misrepresents the record when he contends that Judge Bastianelli informed the jury of his friendship with the prosecutor or vouched for the prosecutor's reputation. The comments Jones attributes to Judge Bastianelli were actually made by trial counsel. No bias was exhibited by the trial judge.

As Jones points out, during the trial Judge Bastianelli intervened to limit questioning when no objection was made, told the jury that Jones was not entitled to counsel at the lineup identification, required Jones to read the letter soliciting perjury, interrupted the testimony of an alibi witness to determine, outside the presence of the jury, whether the witness had been previously convicted of a crime, refused to produce in court a prisoner who had been identified in a lineup by one of the witnesses [although a picture of the prisoner who had been misidentified in the lineup was presented], and spoke, outside the presence of the parties, with a juror who reported that an unidentified individual had appeared at the juror's house asking about the trial. The trial judge was acting within his discretion to limit evidence and control the trial in the interests of judicial economy. With respect to the judge's contact with the juror, no request was made to voir dire the juror and there is no suggestion that the judge's comments to the juror created prejudice. None of these actions by Judge Bastianelli

17

during the course of the trial exhibited objective bias. We reject Jones' claim of judicial partiality.

(Respt.'s Answer, Ex. E at 5-8, internal citations and footnotes omitted.)

To be sure, Jones-El argues in his reply brief that the court of appeals' June 17, 1998 decision and order became a nullity once he was granted habeas relief by this court reinstating his appellate rights. Thus, he concludes that the respondent did not meaningfully respond to this particular argument by merely referring this court to the Wisconsin Court of Appeals' June 17, 1998 decision and order on this issue. I disagree.

In its decision and order of April 5, 2006, which followed the reinstatement of Jones-El's appellate rights, the Wisconsin Court of Appeals expressly stated as follows:

> ¶ 7 The federal court ordered that Jones's appellate rights be reinstated so that he could exercise his right to be represented by counsel on appeal. His appellate rights were reinstated, and counsel was appointed to represent him. Jones then knowingly, intelligently, and voluntarily waived his right to be represented in this appeal. Consequently, we will not revisit the issues we decided in his previous *pro se* appeal. As to those issues, we affirm all of our rulings in his previous appeal, and incorporate our decision from that appeal as our decision in this appeal.

(Respt.'s Answer, Ex. N at 4.)

In other words, to the extent that issues were decided in Jones-El's earlier *pro se* appeal, those particular issues were decided in the exact same fashion in his second appeal. Far from being a nullity, the first court of appeals' decision became an explicit part of that court's second decision. Thus, it is the language of the first decision (incorporated into the second decision) that is to be examined in determining whether the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Jones-El argues that the "trial court flat out refused to apply *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450 (1954), the controlling law on third party contacts with jurors during trial, finding it was inapplicable." (Pet'r's Reply Br. at 9.) He further argues that the trial court "didn't even consider *[I]n re Murchinson*, 349 U.S. 133, 75 S.Ct. 623 (1955), or *Taylor v. Hayes*, 418 U.S. 488, 94 S. Ct. 2697 (1974), the controlling law on judicial impartiality." (*Id.*)

In *Remmer*, the petitioner had been convicted by a jury on several counts charging willful evasion of the payment of federal income taxes. 347 U.S. at 228. The Court in *Remmer* recited the pertinent facts as follows:

> After the jury had returned its verdict of guilty, the petitioner learned for the first time that during the trial a person unnamed had communicated with a certain juror, who afterwards became the jury foreman, and remarked to him that he could profit by bringing in a verdict favorable to the petitioner. The juror reported the incident to the judge, who informed the prosecuting attorneys and advised them. As a result, the Federal Bureau of Investigation was requested to make an investigation and report, which was accordingly done. The F.B.I. report was considered by the judge and prosecutors alone, and they apparently concluded that the statement to the juror was made in jest, and nothing further was done or said about the matter. Neither the judge nor the prosecutors informed the defendant of the incident, and he and his counsel first learned of the matter by reading of it in the newspapers after the verdict.

347 U.S. at 228.

Based on the above, the Court ruled that a hearing should be conducted to determine whether the incident complained of was harmful to the defendant and, if after the hearing it were found to have been harmful, to grant the defendant a new trial. *Id.* at 230. In reaching its conclusion the Court held as follows:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Id.* at 229.

The facts in Jones-El's case are markedly different from those in *Remmer*. First of all, unlike in *Remmer* where the defendant was not advised of the juror contact, Jones-El and his counsel were fully advised of the facts surrounding the juror contact. Notably, no request was made to voir dire the juror. And, as the court of appeals noted in its June 17, 1998 decision and order, "there is no suggestion that the judge's comments to the juror created prejudice." (Respt.'s Answer, Ex. E at 8.) Indeed, Jones-El does not argue otherwise. In sum, Jones-El has not demonstrated that the state court's treatment of the juror-contact issue constituted an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. But what about his claim of judicial partiality and bias?

The Supreme Court has observed that "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. at 136. "'[D]ue process is violated when a judge presides in a case that would offer a possible temptation to the average man . . . to forget the burden of proof required to convict the defendant or would lead him not to hold the balance nice, clear and true between the state and the accused.'" *Guest v. McCann*, 474 F.3d 926, 931 (7th Cir. 2007) (quoting *Harrison v. McBride*, 428 F.3d 652, 667(7th Cir. 2006)). That said, the Seventh Circuit, in *Franklin v. McCaughtry*, stated the following:

> The general presumption is that judges are honest, upright individuals and thus that they rise above biasing influences. A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a possible temptation to be biased. But not all temptations are created equal. Nevertheless, the presumption is rebuttable. Sometimes, the influence is so strong that we may presume actual bias. In rare cases, there may even be evidence of actual bias. To prove disqualifying bias, a petitioner must offer either direct evidence or a possible temptation so severe that we might presume an actual, substantial incentive to be biased. Absent a smoking gun, a petitioner may rely on circumstantial evidence to prove the necessary bias.

398 F.3d 955, 959-60 (7th Cir. 2005) (internal quotations and citations omitted).

20

Furthermore, "the Supreme Court has decided that both actual bias and the appearance of bias violate due process principles. . . . [W]here there is a structural error, such as judicial bias, harmless error analysis is irrelevant." *Franklin*, 398 F.3d at 961.

As the Wisconsin Court of Appeals correctly observed, much of Jones-El's fault-finding with respect to Judges Vuvunas and Bastianelli finds its genesis in certain evidentiary rulings. The court of appeals' decision that those circuit court judges' rulings did not exhibit judicial bias was not an unreasonable decision. This no surprise because evidentiary rulings seldom provide a basis for finding judicial partiality. *See Ross v. United States,* 2009 WL1586006, * 4 (N.D. Ill.) ([T]he fact that the Court denied Ross' motion to suppress is an insufficient basis to establish judicial bias."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[J]udicial rulings rarely present a valid basis for a recusal motion"); *In re Goland*, 239 F.3d 931, 938 (7th Cir. 2001) ("Without other evidence, we will not find bias merely because a party loses on the merits.").

Jones-El's complaints about Judge Bastianelli's trial rulings suffer the same fate. Jones-El finds fault with many of Judge Bastianelli's rulings and with the manner in which he conducted the trial. But the court of appeals, in its June 17, 1998 decision and order, addressed those complaints and stated that "[n]one of these actions by Judge Bastianelli during the course of the trial exhibited objective bias. We reject Jones' claim of judicial partiality." (Respt.'s Answer, Ex. E at 8.).

After reviewing the litany of complaints presented by Jones-El, I cannot say that the court of appeals' decision rejecting such complaints is unreasonable. Indeed, many if not all of the remarks and interjections made by Judge Bastianelli during the trial were in the interest of moving the case along, clarification, avoiding the admission of irrelevant evidence and not wasting valuable court time. To be sure, at one point Judge Bastianelli remarked to the attorneys at sidebar that he was sensitive to the effect that his interjections might have on the jury. More precisely, he chastised the

prosecution for not raising, *inter alia*, relevancy objections. But far from exhibiting judicial bias against Jones-El, Judge Bastianelli's remarks demonstrate a laudable sensitivity to Jones-El's right to a fair trial. In sum, the court of appeals' decision rejecting Jones-El's claim of judicial partiality/bias was not an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. Thus, to the extent that Jones-El's habeas corpus petition is predicated on a violation of due process because of judicial bias, his petition will be denied.

**D. Denial of Fair Trial**

Jones-El argues that he was deprived of due process when the trial court did not allow him to call as a witness an individual who was identified by one witness at a lineup as being the robber. More precisely, Karen Uttech, who was a witness to the robbery, was asked by the police to view a lineup while she was home in Kenosha during her Thanksgiving school break. This was several months after the robbery. Uttech viewed the lineup and identified a person who was not Jones-El as the robber, to wit, a person named Charles Crenshaw. At the lineup's conclusion, Uttech commented that the armed robber had long hair and she inquired whether an arrestee could cut his hair while in jail. Subsequently, she was shown a photo array. Uttech identified Jones-El as the robber from the photo array. In the photo array, Jones-El was depicted as he appeared on the day of his arrest.

At trial, Jones-El sought to call Charles Crenshaw as a witness principally so that the jury could see what he looked like. The trial court denied his request, finding that to do so would be cumulative. In affirming the trial court's decision, the court of appeals stated the following in its April 5, 2006 decision and order:

> ¶ 10 Jones also argues that the circuit court erred when it refused to allow him to call Charles Crenshaw, the person a witness initially identified as the robber. The circuit court denied the request, finding that the evidence was cumulative. Defense counsel argued that he wanted to ask the witness two questions, but that the purpose of having the witness testify was to allow the jury to see what he looked like. The court would not allow Crenshaw to testify because it found that the jury had been told that the

22

witness first identified Crenshaw as the robber, and that the jury had seen a photograph of Crenshaw. There was no dispute that the witness picked the wrong person. The court further found that it did not really matter what Crenshaw looked like at the time of trial because this was two years after the crime. The court stated: "If he comes in today, you can't say, you know, things change. You know, two years older, maybe the hair's changed, maybe other things. So I'm not sure that really says how he looked in '93."

¶ 11 "A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has 'a reasonable basis' and was made 'in accordance with accepted legal standards and in accordance with the facts of record.'" *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262 (Ct. App. 1992) (citations omitted). We conclude that the circuit court properly exercised its discretion when it refused to allow Crenshaw to testify based on the offer of proof made by defense counsel.

(Respt.'s Answer, Ex. N at 5-6.)

The circuit court's decision to not allow Crenshaw to be called as a witness was certainly not unreasonable. More importantly, the court of appeals' decision affirming the circuit court's decision did not rise to the level of an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

To be sure, Jones-El cites *Chambers v. Mississippi*, 410 U.S. 294 (1973) and *Rock v. Arkansas*, 483 U.S. 44 (1987) in support of his position that the state court's decision deprived him of his right to present the defense of misidentification. But, the state court's ruling did no such thing. To the contrary, the jury was informed that Uttech had picked out the photograph of Crenshaw as being that of the robber. Furthermore, the jury was shown the photograph of Crenshaw that Uttech had picked out. Thus, Jones-El was able to provide to the jury a basis to argue misidentification. What Crenshaw may have looked like two years after the robbery was not relevant. It was what Crensahw looked like at the time the lineup was conducted that was relevant. And that information was presented to the jury for its consideration. Thus, to the extent that Jones-El seeks habeas relief predicated on the claim that

he was deprived of his right to a fundamentally fair trial by his not being allowed to call Crenshaw as a witness, his habeas petition will be denied.

Jones-El also argues that he was the victim of prosecutorial misconduct by virtue of certain arguments made by the prosecutor. He extracts from the transcript select portions of the prosecutor's closing argument to the jury and asserts that these demonstrate that the prosecutor engaged in egregiously improper argument.

The court of appeals addressed and rejected this argument in its April 5, 2006 decision and order by stating as follows:

> ¶ 12 Jones next argues that the State engaged in prosecutorial misconduct. In support of this claim, Jones gives a long list of examples of what he characterized as egregious conduct by the prosecutor. "A prosecutor may comment on the evidence, detail the evidence, argue from it to a conclusion, and state that the evidence convinces him or her and should convince the jurors." *State v. Adams*, 221 Wis. 2d 1, 19, 584 N.W. 2d 695 (Ct. App. 1998) (citation omitted). Prosecutors are permitted to strike hard blows, but not foul ones. *State v. Neuser*, 191 Wis. 2d 131, 139, 528 N.W. 2d 49 (Ct. App. 1995). The issue is whether the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 136 (citation omitted). We see nothing in the examples he cites that rises to the level of prosecutorial misconduct.

(Resp.'s Answer, Ex. N at 6.)

This court has reviewed the closing arguments of the prosecutor. Like the Wisconsin Court of Appeals, I find that the prosecutor's remarks were not outside the bounds of fair argument and certainly did not infect the trial with unfairness to such a degree as to deprive Jones-El of due process. Even more importantly, I cannot find the decision of the court of appeals on this issue to be an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. Thus, to the extent that Jones-El seeks habeas relief predicated on the claim that he was deprived of his right to due process by prosecutorial misconduct in connection with the prosecutor's arguments, his habeas petition will be denied.

**E. Denial of the Effective Assistance of Counsel**

Jones-El argues that his trial counsel was constitutionally ineffective in several ways: (1) for failing to ask to voir dire the juror who had been approached by a third-party; (2) for revealing to the jury the nature of Jones-El's prior convictions; and (3) for failing to seek suppression of identification evidence on Fourth Amendment grounds. The court will address his claims, but not in the above-listed order.

To reiterate, defendants in criminal cases have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective, and that the ineffective assistance prejudiced the defendant. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Previously, this court noted that the state court had found that counsel's decision to tell the jury about the nature of the prior convictions was a sound trial strategy. This court further ruled that the court of appeals' application of *Strickland* to the facts as presented in this case was not unreasonable, but instead was a reasonable application of *Strickland*. It therefore follows that, to the extent Jones-El's ineffective assistance of counsel claim is predicated on his assertion that his trial counsel should not have told the jury about the nature of his prior convictions, his claim must be denied.

Jones-El also claims that his trial counsel was ineffective for failing to challenge the impermissibly suggestive line-ups and photo array. Once again, however, the state courts addressed the merits of those challenges and found that neither the line-ups nor the photo array were

impermissibly suggestive. Even more importantly, this court found the state court's ruling on such matter to not have been an unreasonable application of *Strickland*.

Furthermore, Jones-El argues that his counsel should have challenged the legality of his arrest (and thus the legality of the line-up that occurred that same day). Once again, however, the state court, albeit in a footnote, found there to have been a lawful basis for his arrest. And this court is not persuaded that the state court's decision on that issue was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.[5]

Thus, to the extent that Jones-El's habeas petition is based on his claim that trial counsel was ineffective for failing to seek suppression of the identifications made during the line-ups and photo array, his habeas corpus petition must be denied.

Finally, Jones-El claims that his trial counsel was ineffective for failing to request a voir dire of the juror who had been approached by a third-party. This claim was presented to and rejected by the court of appeals in its April 5, 2006 decision. The court stated as follows:

> ¶ 14 Next Jones argues that his trial counsel was ineffective in the way he handled an incident that occurred on the last day of trial. On that day, the court told the parties that one of the jurors had informed the court that someone had come to his house to talk about the case. The court also said that the juror had refused to talk to the person and so the person left. At sentencing, the court suggested that Jones was behind the incident involving the juror. Jones argues that counsel was ineffective because he did not ask for a voir dire of the juror, and did not ask the court to instruct the juror not to discuss the incident with other jurors.

> ¶ 15 During the ***Machner*** hearing, defense counsel testified that he did not move to voir dire the juror because he did not want to draw attention to the incident, and that the jurors had been told not discuss such things with each other. The court also found the jurors are instructed not to talk among themselves about any aspect of the case, and

---

[5] Moreover, because the state court's decisions have not been shown to be contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, it follows that Jones-El was also not prejudiced by any of his trial counsel's alleged shortcomings with respect to challenging the line-ups, photo array or arrest of Jones-El.

to base their decision only on the facts presented at trial. The court concluded that counsel's decision not to voir dire was reasonable and that he had not performed ineffectively. The court found that the incident was "tenuous" and there was no potential harm. We agree with the court's conclusion that counsel did not perform ineffectively by not pursuing the matter any further.

(Resp.'s Answer, Ex. N at 6-7.)

Simply stated, Jones-El has not demonstrated that the state court's ruling on the juror contact issue was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. At best, he argues that he thinks it was wrongly decided. But that is not sufficient to obtain federal habeas corpus relief. Moreover, he has not shown how he suffered prejudice by his counsel's failure to voir dire the juror. Thus, to the extent that Jones-El's habeas petition is based on his claim that trial counsel was ineffective for failing to voir dire the juror who claimed to have been approached by an unidentified third party, his habeas corpus petition will be denied.

**F. Denial of Full and Fair Appellate Review of Claims in the Wisconsin Courts**

Jones-El's final claim is that he was deprived of a full and fair appellate review of his claims in the state court. He asserts as follows:

In this case the Court of Appeals affirmed Jones-El's conviction and the trial court's decision denying post-conviction relief. The Wisconsin Supreme Court in turn affirmed the Court of Appeals. In doing so, each court decided Jones-El's appeals arbitrarily, refused to deliver decisions on the merits of his claims under a full and fair review, and overall simply denied him a fair appellate procedure.

Jones-El was under a new direct appeal, as ordered by this very court in Jones-El v. Berge, 246 F. Supp. 2d 1045 (E.D. Wis. 2003), which issued a conditional writ of Habeas Corpus mandating Jones-El's release within 120 days unless Jones-El was granted both a new direct appeal and the assistance of appellate counsel. Id. 1059; not one or the other. The court made two things clear: (1) "Petitioner is free to raise any or all of these claims in the new appellate proceeding he is being afforded." Id. 1059; and (2) that Jones-El "may waive his right to the assistance of counsel" if he "knows what he is doing and his choice is made with eyes open." Id. 1051-52. However, because Jones-El disagreed with appellate counsel, who was not [going to] raise any of the arguments now before the court, and exercised his choice to forgo counsel with

27

"eyes open," the court of appeals decided to defy the writ and deny Jones-El a "new direct appeal", stating

> Consequently, we will <u>not</u> revisit the issues we decided in his previously pro se appeal. As to those issues, we affirm all of our rulings in his previous appeal, and incorporate our decision from that appeal as our decision in this appeal. (Emphasis added).

> That previous decision was found to be constitutionally infirm by this court, which is why the "new" direct appeal was ordered. A reliance on a previous 1996 decision which was rendered in large part summarily (no post-conviction hearings, counsel never examined, etc.), does not qualify as a "new" direct appeal and a full and fair decision on the claims now before the court.

(Pet'r's Br. at 39, internal citations omitted, emphasis in the original.)

Distilled to its essence, Jones-El's claim seems to be that he believes that he was not afforded the relief ordered by United States District Judge Adelman in *Jones-El v. Berge*, 246 F. Supp. 2d 1045 (E.D. Wis. 2003). I disagree.

In *Jones-El v. Berge*, Judge Adelman ruled that the state court had not found at any point that Jones-El actually waived the right to the assistance of appellate counsel. *Id*. at 1053. Secondly, even if a certain letter written by Jones-El could have been construed as a waiver of his right to the assistance of counsel, Judge Adelman ruled that there was no evidence from which the state court could have concluded that it was a knowing and intelligent waiver. *Id*. at 1057. Thus, Judge Adelman ordered that the State "afford[ ] [Jones-El] a new appeal with the assistance of appointed counsel." *Id*. at 1059.

To be sure, Judge Adelman stated that, because he had resolved Jones-El's petition based on the denial of appellate counsel, he was not going to address "the other issues [Jones-El] ha[d] raised . . . [and that Jones-El was] free to raise any or all of these claims in the 'new' appellate proceedings he is being afforded." *Id.* But Judge Adelman's order did not require that the court of appeals issue a decision that would *de novo* address all of Jones-El's claims (whether they had been previously

presented and considered by the state courts or not), without any reference to or reliance on any of its previous decisions. Instead, the heart of Judge Adelman's order rested on Jones-El not being afforded appellate counsel and the paucity of the record with respect to any waiver by Jones-El of his right to appellate counsel.

In the subsequent appellate proceedings, Jones-El did knowingly and intelligently waive his right to appellate counsel. Indeed, Jones-El does not dispute that fact. And the state courts did comply with Judge Adelman's order by affording Jones-El another appellate proceeding, including a post-conviction motion hearing. That Jones-El may disagree with some of the rulings made by the circuit court and thereafter by the court of appeals does not translate into a meritorious claim that the state court did not comply with Judge Adelman's order.

This then takes me to Jones-El's more substantive issue: was he afforded a full and fair appellate review of his claims? In my opinion, he was. Indeed, he was granted a hearing before the circuit court, which was conducted on March 31, 2004 and May 7, 2004. His trial counsel testified at that hearing and Jones-El was afforded an opportunity to question his prior counsel. To be sure, Jones-El claims that he was not afforded an adequate opportunity to question his trial counsel. In his brief, Jones-El states the following:

> [Jones-El] was not allowed to provide oral argument as to why counsel's testimony regarding his alleged trial strategies was unsound; and was not allowed to delve into counsel's biasness, or other motives, as a basis for his testimony attempting to justify his ineffective representation; all things defendant is allowed to do at a full and fair hearing. At that time former counsel was working with the prosecution literally employed with them. However, Jones-El was cut short from questioning counsel outside of the above enumerated matters, and thus never got to impeach him regarding his previous falsifying documents, fraud, dishonesty, etc. and license suspension.

(Pet'r's Br. at 40, internal citations omitted).

But I have reviewed the transcript of that entire hearing and am satisfied that Jones-El received more than an adequate opportunity to present his claims and to examine his trial counsel. Even more

to the point, the court of appeals had the following to say in its April 5, 2006 decision and order with respect to the manner in which the hearing was conducted:

> ¶ 16 Jones also argues that the trial court improperly prohibited him from questioning trial counsel during the ***Machner*** hearing. The record, however, belies this assertion. "A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has 'a reasonable basis' and was made 'in accordance with accepted legal standards and in accordance with the facts of record.'" ***Jenkins***, 168 Wis. 2d at 186 (citations omitted). The court granted Jones much leeway and acknowledged his status as a *pro se* litigant. The court, however, limited Jones's questions when he attempted to pursue matters over objections and beyond the scope of appropriate questioning. The court properly exercised its discretion when it limited Jones's questioning of defense counsel.

(Resp.'s Answer, Ex. N at 7.)

I certainly cannot say that the court of appeals' decision as set forth above was either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d).

Thus, to the extent that Jones-El's habeas petition is based on his claim that he was denied a full and fair appellate review of his claims in the state courts, his habeas petition will be denied.

In conclusion, and for all of the foregoing reasons, Jones-El's habeas petition will be denied and this action will be dismissed. Furthermore, Jones-El's motion for an evidentiary hearing will be denied as moot.

There is one final matter to address. The recently amended provisions of Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> **(a) Certificate of Appealability.** The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies

30

a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. Thus, for the court to issue a certificate of appealability to Jones-El, the court must determine "that the issues [certified on appeal] are debatable among jurists of reason; that a court *could* resolve the issues in a different manner; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (emphasis in the original) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying Jones-El's habeas corpus petition, none of Jones-El's claims warrants a certificate of appealability. Put simply, the petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or

31

that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Consequently, the court will deny Jones-El a certificate of appealability. Of course, Jones-El retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that the petitioner's petition for writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the petitioner's motion for an evidentiary hearing be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 27th day of January 2009 at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
